**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **MONICA MCWILLIAMS** | **CASE NO. 3:25-CV-00984** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **NEW VISION LEARNING ACADEMY** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

# MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 15] filed by Defendant, New Vision Learning Academy ("NVLA"). Plaintiff, Monica McWilliams ("McWilliams") filed an Opposition to NVLA's Motion [Doc. No. 22], and NVLA filed a Reply [Doc. No. 29].

For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTS AND BACKGROUND

### A. McWilliams' Employment History

In August of 2021, McWilliams started at NVLA as a third-grade teacher.[1] May 2024, her contract was not renewed at the end of the academic year.[2] The events that occurred during her three years of employment are discussed below.

[1] [Doc. No. 15-1, ¶ 1]; [Doc. No. 22-14, ¶ 1].
[2] [Doc. No. 15-1, ¶ 2]; [Doc. No. 22-14, ¶ 2].

Shortly after beginning her employment, McWilliams informed Dr. Andrea Miller ("Dr. Miller"), NVLA's Executive Director, that she had a medical condition that prevented her from standing for extended periods.[3] At Dr. Miller's request, McWilliams provided NVLA with a physician's note stating that she could not stand for prolonged periods and needed to sit periodically throughout the day.[4] McWilliams provided NVLA with an updated physician's note during each year of her employment.[5] Her most recent note stated that she should wear soft-soled shoes and be permitted to take breaks from standing every fifteen minutes.[6] During McWilliams' first two years of employment and for most of her third year, NVLA permitted her to wear soft-soled shoes and take breaks as needed.[7]

**B. 2024 LEAP Testing**

Each year, NVLA administers the Louisiana Educational Assessment Program ("LEAP") examinations.[8] The Louisiana Department of Education ("DOE") provides participating schools and teachers with a testing manual governing administration of the examinations.[9] The manual directs a teacher assigned to proctor the examination to "[c]ontinually monitor the testing process by moving unobtrusively throughout the room."[10]

[3] [Doc. No. 15-1, ¶ 6]; [Doc. No. 22-14, ¶ 6].
[4] [Doc. No. 15-1, ¶¶ 7–8]; [Doc. No. 22-14, ¶¶ 7–8].
[5] [Doc. No. 15-1, ¶ 9]; [Doc. No. 22-14, ¶ 9].
[6] [Id.].
[7] [Doc. No. 15-1, ¶ 12]; [Doc. No. 22-14, ¶ 12].
[8] [Doc. No. 15-1, ¶ 13]; [Doc. No. 22-14, ¶ 13].
[9] [Doc. No. 15-1, ¶ 14]; [Doc. No. 22-14, ¶ 14].
[10] [Doc. No. 15-1, ¶ 15]; [Doc. No. 22-14, ¶ 15].

McWilliams completed the first day of the 2024 LEAP examination without incident.[11] On the morning of the second day, McWilliams informed Dr. Miller and NVLA Test Coordinator, Votika Lynch ("Lynch"), that her feet were bothering her.[12] The parties dispute what occurred thereafter.[13]

McWilliams contends that Dr. Miller told her that she was required to stand and could not take a break, rejected Lynch's suggestion that McWilliams lean against a wall, and directed McWilliams to go home until testing was completed.[14] NVLA maintains that Lynch suggested that McWilliams lean against a desk or wall and take extended breaks between examinations, but that McWilliams declined those suggestions and elected to use paid time off until testing concluded.[15] McWilliams left NVLA during the LEAP testing period and returned after testing concluded.[16]

**C. McWilliams' Contract Not Renewed**

Following the conclusion of the 2023–2024 academic year, Dr. Miller informed McWilliams that NVLA would not renew her teaching contract.[17] McWilliams states that Dr. Miller told her that NVLA was "going in a different direction."[18] McWilliams further contends that at the time of nonrenewal, Dr. Miller did not identify LEAP scores or attendance at school events as reasons for the nonrenewal at that meeting or previously.[19]

---

[11] [Doc. No. 15-1, ¶ 17]; [Doc. No. 22-14, ¶ 17].
[12] [Doc. No. 15-1, ¶ 17];
[13] Compare [Doc. No. 15-1, ¶¶ 18–22], with [Doc. No. 22-14, ¶¶ 18–22].
[14] [Doc. No. 22-14, ¶¶ 18–22].
[15] [Doc. No. 15-1, ¶¶ 18–22].
[16] Compare [Doc. No. 15-1, ¶ 22], with [Doc. No. 22-14, ¶ 22].
[17] [Doc. No. 15-1, ¶ 27]; [Doc. No. 22-14, ¶ 27].
[18] [Doc. No. 15-1, ¶ 41]; [Doc. No. 22-14, ¶ 41].
[19] [Doc. No. 22-14, ¶ 27; id. at ¶¶ 16–17].

However, NVLA maintains that its decision was based on McWilliams' failure to participate in school events and on low LEAP scores attributed to her students.[20] According to NVLA, teachers were expected to attend evening and school-day events, and McWilliams failed to participate regularly.[21] McWilliams disputes both that attendance at after-hours events was discussed during her interview and that she failed to attend such events.[22]

NVLA also relies on LEAP data from the 2021–2022 and 2022–2023 academic years.[23] NVLA states that, during the 2021–2022 school year, fifty-one (51) percent of McWilliams' students scored either "approaching basic" or "unsatisfactory" in English Language Arts and fifty-three (53) percent received an "unsatisfactory" score in social studies.[24] NVLA further states that, during the 2022–2023 school year, eighty-two (82) percent of McWilliams' students scored either "approaching basic" or "unsatisfactory" in English Language Arts and all of her students scored either "approaching basic" or "unsatisfactory" in social studies.[25] McWilliams argues that the publicly available DOE data does not identify which third-grade students she taught and therefore cannot be attributed specifically to her classroom.[26]

[20] [Doc. No. 15-1, ¶ 28].
[21] [Doc. No. 15-1, ¶¶ 4–5, 28].
[22] [Doc. No. 22-14, ¶¶ 4–5, 28].
[23] [Doc. No. 15-1, ¶¶ 25–26].
[24] [Id. at ¶ 25].
[25] [Id. at ¶ 26].
[26] [Doc. No. 22-14, ¶¶ 23–26].

### D. Events Following Nonrenewal

On July 25, 2024, McWilliams applied for disability-retirement benefits through the Teachers' Retirement System of Louisiana ("TRSL").[27] In connection with that application, McWilliams described physical limitations affecting her ability to perform certain duties associated with her teaching position.[28] NVLA contends that McWilliams' TRSL application and subsequent approval demonstrate that she could not perform the duties of a third-grade teacher.[29] McWilliams disputes that characterization and maintains that the TRSL materials addressed her ability to work without restrictions rather than her ability to perform the job with reasonable accommodations.[30]

On August 11, 2024, McWilliams mailed NVLA a certified letter requesting that NVLA complete paperwork necessary for her TRSL application.[31] NVLA contends that McWilliams' application for and receipt of TRSL disability-retirement benefits demonstrate that she could not perform the duties of a third-grade teacher.[32]

Dr. Miller also directed Lynch to prepare a written account concerning the May 7, 2024, LEAP-testing incident.[33] The document is dated May 7, 2024, but states that McWilliams "returned on Wednesday, May 15, 2024."[34] McWilliams contends that this indicates the document was created or backdated after May 7, 2024.[35] NVLA

[27] [Doc. No. 15-1, ¶ 30]; [Doc. No. 22-14, ¶ 30].
[28] [Doc. No. 15-1, ¶ 31]; [Doc. No. 22-14, ¶ 31].
[29] [Doc. No. 15-1, ¶¶ 31–35].
[30] [Doc. No. 22-14, ¶¶ 31–35].
[31] [Doc. No. 15-1, ¶ 36]; [Doc. No. 22-14, ¶ 36].
[32] [Doc. No. 22-14, ¶ 37].
[33] [Doc. No. 22-14, ¶ 5].
[34] [Id. at ¶ 6].
[35] [Doc. No. 22-14, ¶¶ 5–7].

disputes that contention and maintains that Lynch prepared the document on May 7, 2024, and referred to McWilliams' anticipated return in the past tense because Lynch knew when McWilliams was expected to return.[36]

The parties also dispute who replaced McWilliams following the nonrenewal.[37] NVLA maintains that Jennifer Lewis ("Lewis"), an existing NVLA teacher, was reassigned to the sole third-grade section after McWilliams' departure, and that Brittany Shaw ("Shaw") was later moved from kindergarten to a newly created additional third-grade section after enrollment increased.[38] Dr. Miller testified that she believed Lewis was in her forties, but the record does not establish Lewis's age with specificity.[39] McWilliams contends that Shaw, who was substantially younger and not yet certified, replaced her.[40]

On March 19, 2025, McWilliams filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").[41] McWilliams identified disability as the basis for the alleged discrimination.[42] In describing the events underlying her charge, McWilliams stated that NVLA failed to accommodate her during the 2024 LEAP testing period, sent her home until testing concluded, and later declined to renew her employment.[43] McWilliams further stated that the reason given for the nonrenewal was that NVLA was "going in a new direction."[44] McWilliams

---

[36] [Doc. No. 29, pp. 9–10].
[37] Compare [Doc. No. 22-14, ¶¶ 8–12], with [Doc. No. 29, pp. 6–7].
[38] [Doc. No. 29, pp. 6–7].
[39] [Doc. No. 22-3, p. 65].
[40] [Doc. No. 22-14, ¶¶ 8–12].
[41] [Doc. No. 15-1, ¶ 38]; [Doc. No. 22-14, ¶ 38].
[42] [Doc. No. 15-1, ¶ 39]; [Doc. No. 22-14, ¶ 39].
[43] [Doc. No. 15-1, ¶ 40]; [Doc. No. 22-14, ¶ 40].
[44] [Doc. No. 15-1, ¶ 41]; [Doc. No. 22-14, ¶ 41].

mailed NVLA a settlement demand on June 10, 2025, and filed this action on July 9, 2025.[45]

The issues have been briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *In re Genesis Marine*, *LLC*, 164 F.4th 448, 453 (5th Cir. 2026) (quoting *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986)). And a dispute about a material fact "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). Put differently, courts must grant summary judgment against a party who does not—or cannot—show "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The movant must first point to "particular parts of materials in the record," such as depositions, documents, electronic information, affidavits, interrogatories, etc., to show there is no genuine dispute of material fact. FED. R. CIV. P. 56(c)(1)(A). Once the movant does so, the burden shifts to the nonmovant who "must go beyond

---

[45] [Doc. No. 15-1, ¶¶ 43–44]; [Doc. No. 22-14, ¶¶ 43–44].

his pleadings and designate specific facts showing that there is a genuine dispute of material fact for trial." *Clark v. Dep't of Pub. Safety & Corr.*, 141 F.4th 653, 659 (5th Cir. 2025) (citing *Celotex*, 477 U.S. at 324). The nonmovant cannot "defeat summary judgment with" metaphysical doubts as to the facts, "'conclusory allegations,' 'unsubstantiated assertions,' or 'only a scintilla of evidence.'" *In re Genesis Marine*, 164 F.4th at 453 (collecting cases).

Finally—and most importantly—when resolving summary judgment motions, "courts may not evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes" and must resolve all ambiguities and draw all permissible inferences "in favor of the non-moving party." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation modified) (citing *Anderson*, 477 U.S. at 255).

**B. Disability Discrimination Claim**

McWilliams brings claims for disability discrimination under the Americans with Disabilities Act ("ADA") and the Louisiana Employment Discrimination Law ("LEDL"). "The LEDL, codified in LA. Rev. Stat. Ann. 23:301, et seq., is modeled after the ADA." *Conine ex rel. Estate of Addie v. Universal Oil Prods. Co.*, 966 So. 2d 763, 767 (La. App. 2007). "In interpreting Louisiana's employment discrimination laws, [Louisiana] courts have relied upon similar federal statutes and the interpreting federal jurisprudence." *Id.*

The ADA prohibits discrimination against a qualified individual based on the individual's disability.42 U.S.C. § 12112(a); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). An employee may use "direct or circumstantial evidence, or both"

to establish a case of discrimination. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). Because McWilliams relies on circumstantial evidence, the *McDonnell Douglas* burden-shifting framework applies. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015).

The framework first requires the employee to establish a *prima facie* case of discrimination. *See LHC Grp.*, 773 F.3d at 694. That requires an employee to establish (1) she is disabled within the meaning of the ADA, (2) she was qualified for the job, and (3) she was fired on account of her disability. *See Nall*, 917 F.3d at 341. "The burden of establishing a *prima facie* case of disparate treatment is not onerous." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012) (quoting *Texas Dep't of Cmty. Affs v. Burdine*, 450 U.S. 248 (1981)). If a *prima facie* case is established, the employer has the burden of "articulat[ing] a legitimate, non-discriminatory reason" for the firing. *See id.* If the employer does so, the burden returns to the plaintiff "to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Cannon v. Jacobs Field Servs. N.A., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016).

McWilliams has a physical impairment that substantially limits her ability to stand for prolonged periods and requires periodic sitting. NVLA knew of that limitation and accommodated it throughout most of her employment.[46] The record therefore establishes that McWilliams has a disability within the meaning of the

[46] [Doc. No. 15-1, ¶¶ 6–12]; [Doc. No. 22-14, ¶¶ 6–12].

ADA. The parties principally dispute whether she was otherwise qualified for the third-grade teaching position.

The parties dispute whether McWilliams was qualified for her role as a third-grade teacher. To be a qualified employee, McWilliams must be able to show that she could either (1) "perform the essential functions of the job in spite of [her] disability," or (2) that "a reasonable accommodation of [her] disability would have enabled [her] to perform the essential functions of [her] job." *LHC Grp., 773 F.3d at 697.*; *see also* 42 U.S.C. § 12111(8). The employer has the burden of defining the essential functions of a particular position. *EEOC v. Res. for Hum. Dev., Inc.*, 827 F. Supp. 2d 688, 696 (E.D. La. 2011) (citing *Dropinski v. Douglas County,* 298 F.3d 704, 707 (8th Cir. 2002)) (holding that when an employer disputes whether or not an employee can perform the essential functions of a job, the employer has the burden of demonstrating what the essential functions are).

McWilliams performed the third-grade teaching position for nearly three academic years while receiving the requested periodic-standing accommodation. At no point was McWilliams informed that she had failed to perform any essential function of the role of teacher, nor has any attempt been made to distinguish "essential" from "marginal" functions as it pertains to this role. *See* 29 C.F.R. § 1630.2.

Separately, the parties dispute the effect of McWilliams' application for disability-retirement benefits. Without resolving the evidentiary dispute, an application for disability benefits granted *without* considering reasonable

accommodation is not dispositive in establishing qualifications to work *with* reasonable accommodation. *See Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 802–03 (1999). Although, contrary to McWilliams' assertion, Dr. Cynthia Brown-Manning did in fact certify that McWilliams suffered from a "total and permanent" disability, the question posed considered only work "without any restrictions" and did not contemplate reasonable accommodation.[47] McWilliams testified that she could teach and perform her job if permitted periodic breaks from standing. On this record, a reasonable jury could find that she could perform the essential functions of the third-grade teaching position with reasonable accommodation.

The parties do not dispute that the nonrenewal of McWilliams' contract was an adverse employment action; they dispute whether it occurred because of her disability. *See Spears v. Louisiana College*, No. 20-30522, 2023 WL 2810057, at *2 (5th Cir. Apr. 6, 2023). In *Gosby*, the Fifth Circuit held that close temporal proximity between an event highlighting an employee's disability and her termination may establish *prima facie* causation. *Gosby v. Apache Indus. Servs., Inc.*, 30 F.4th 523, 527 (5th Cir. 2022). Although only six days separated the events in *Gosby*, the court relied on retaliation cases recognizing longer periods as sufficiently close, including a six-and-one-half-week interval. *Id.* (citing *Lyons*, 964 F.3d at 305). Here, seventeen days separated McWilliams' disability-related dispute with Dr. Miller and the nonrenewal.

That McWilliams' annual contract was then approaching renewal does not defeat the *prima facie* inference. *See id.* at 527 ("If in fact her short-term position was

---

[47] Compare [Doc. No. 22, p. 14], with [Doc. No. 15-8, p. 6, sec. 10C].

to end for other reasons at the same time, that can be shown by the employer as part of its response."). Therefore, there is sufficient evidence for a reasonable jury to conclude that McWilliams has shown the basis for a causal connection between her disability and termination and, along with the other elements, has made a *prima facie* case.

After the employee makes out a *prima facie* case, the employer must articulate a "legitimate, nondiscriminatory reason" for the adverse employment action; if it does so, the burden shifts back to the employee. *See Goudeau*, 793 F.3d at 474. "This burden is satisfied by introducing evidence which, if true, would permit the trier-of-fact to conclude that the termination was nondiscriminatory." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). At that point, the employee must present "'substantial evidence' that the employer's legitimate, nondiscriminatory reason for termination is pretextual." *Delaval v. PTech Drilling Tubulars, LLC*, 824 F.3d 476, 480 (5th Cir. 2016) (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015)). She may do so by showing that the employer's explanation is false or "unworthy of credence." *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

In this case, NVLA offers two reasons for McWilliams' termination: (1) her alleged failure to attend school activities and (2) the test performance of her third-grade class. The parties dispute the factual question of McWilliams' attendance at the activities in question. NVLA claims McWilliams "did not participate" in

extracurricular programming.[48] McWilliams claims she "cannot recall any events [she] was not able to attend."[49] Resolving those conflicting accounts would require the Court to make a credibility determination, which it cannot do on summary judgment. *See Guzman*, 18 F.4th at 160.

There is also the matter of McWilliams' students' performance on the LEAP exam during the three years she taught at NVLA. In her affidavit, Dr. Miller states that DOE provided NVLA teacher-specific LEAP results and identified poor results for McWilliams' students in 2021–2022 and 2022–2023.[50] In order to argue this claim is pretextual, McWilliams contends that her students' scores were comparable to the performance of students throughout NVLA.[51] Dr. Miller did not agree with that characterization but admitted that NVLA was performing poorly and had received a "D" rating from the state. [52]

McWilliams received positive performance evaluations, was never disciplined or reprimanded, and received a favorable recommendation from Dr. Miller approximately one year before her contract was not renewed.[53] Neither the alleged attendance problems nor the LEAP scores were communicated to McWilliams as reasons for the nonrenewal.[54] NVLA does not identify 2023–2024 scores as a basis for the nonrenewal. Viewed in McWilliams' favor, the record contains evidence from which a reasonable jury could question whether the asserted performance concerns

---

[48] [Doc. No. 15-5, pp. 43–46].
[49] [Doc. No. 22-13, ¶ 4].
[50] [Doc. No. 15-6, ¶¶ 7–13].
[51] [Doc. No. 22, pp. 14–15].
[52] [Doc. No. 22-3, p. 51].
[53] [Doc. No. 22-1, p. 11]; [Doc. No. 22-3, pp. 90–91].
[54] [Doc. No. 22-3, pp. 47–49].

motivated the nonrenewal. Therefore, resolution of McWilliams' claim of discrimination is not appropriate on summary judgment and the genuine disputes of material fact must be resolved by the jury.

### C. Failure to Accommodate Claim

No "covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "[T]he term 'discriminate against a qualified individual on the basis of disability' includes . . . not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

In this case, even accepting McWilliams' version of events, NVLA provided reasonable accommodation. McWilliams maintains that Dr. Miller sent her home for the remainder of LEAP testing after refusing to permit periodic sitting.[55] But the Fifth Circuit recognizes that time off, whether paid or unpaid, can constitute reasonable accommodation. *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016); *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017). And the ADA requires reasonable accommodation, not the employee's preferred accommodation. *Jennings v. Towers Watson*, 11 F.4th 335, 344 (5th Cir. 2021).

---

[55] [Doc. No. 22-1, pp. 23–26].

Moreover, the conflict arose only during the limited LEAP testing period, when NVLA required proctors to continuously monitor students by moving throughout the room. McWilliams returned to work after testing concluded.[56] Thus, even if Dr. Miller directed McWilliams to use leave rather than McWilliams electing to do so, the leave accommodated the temporary conflict between McWilliams' standing restriction and NVLA's testing requirements.

McWilliams argues that NVLA should instead have permitted periodic sitting and relies on *Louisiana v. EEOC*, 784 F. Supp. 3d 886, 893 (W.D. La. 2025).[57] But *Louisiana* applied the Pregnant Workers Fairness Act, which expressly prohibits requiring leave when another reasonable accommodation is available. 42 U.S.C. § 2000gg-1(4). The ADA contains no comparable provision. Because NVLA provided reasonable accommodation, it was not required to provide McWilliams' preferred one. *Jennings*, 11 F.4th at 344.

Accordingly, McWilliams cannot establish that NVLA failed to reasonably accommodate her disability. Therefore, summary judgment is appropriate on this claim.

### D. Age Discrimination Claim

NVLA first argues that McWilliams failed to exhaust her administrative remedies because her EEOC Charge (the "Charge") identified disability, but not age, as the basis of discrimination.[58] A judicial complaint, however, is not limited by the

---

[56] [*Id.*].
[57] [Doc. No. 22, pp. 18–21].
[58] [Doc. No. 15-9].

boxes checked on an EEOC charge. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462, 464 (5th Cir. 1970). Rather, the Court considers the scope of the EEOC investigation that could "reasonably be expected to grow out of" the charge. *Id.* at 466.

McWilliams' Charge challenged the nonrenewal of her employment and alleged that NVLA told her it was "going in a different direction."[59] She did not check the age-discrimination box or mention her age, and she maintains that she did not know the age of the teacher she believed replaced her when she filed the Charge.[60] She argues that an investigation into the challenged nonrenewal could reasonably include inquiry into who assumed her position and whether age played a role in that decision.[61]

The Court agrees. McWilliams' age claim concerns the same adverse employment action identified in the Charge and presents an alternative discriminatory motive for that decision. Under *Sanchez*'s liberal construction of EEOC charges, an investigation into the nonrenewal could reasonably have encompassed the circumstances surrounding McWilliams' replacement. *See Sanchez*, 431 F.2d at 462–66. Accordingly, McWilliams exhausted her administrative remedies as to her ADEA claim.

NVLA separately argues that McWilliams failed to provide the notice required for her state-law age-discrimination claim under La. Rev. Stat. Ann. § 23:303(C).[62] An EEOC charge may satisfy that notice requirement when the state-law claim falls

---

[59] [Doc. No. 22-1, p. 25].
[60] [Doc. No. 22-14, ¶ 8].
[61] [Doc. No. 22, pp. 25–26].
[62] [Doc. No. 15-2, pp. 13–15].

within the discrimination reasonably encompassed by the charge. *See McNulty v. Cox Media Grp. LLC*, No. 18-01372, 2019 WL 1716313, at *8 (W.D. La. Feb. 12, 2019). Because the Court finds that McWilliams' age-discrimination claim could reasonably be expected to grow out of the Charge, the Charge likewise provided NVLA sufficient notice of the state-law claim. The Louisiana age-discrimination claim is analyzed under the same framework as the ADEA claim. *See Conine ex rel. Estate of Addie v. Universal Oil Prods. Co.*, 966 So. 2d 763, 767 (La. App. 2007).

On the merits, a plaintiff may establish a *prima facie* case of age discrimination by showing that she: (1) was discharged; (2) was qualified for the position; (3) was within the protected class; and (4) was replaced by someone substantially younger or otherwise discharged because of her age. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). An employee is not "replaced" merely because another employee later performs some of her former duties. Where a position is eliminated and its duties are distributed among existing employees, there is no replacement. *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339–40 (5th Cir. 2021); *Meinecke v. H & R Block of Hous.*, 66 F.3d 77, 84 (5th Cir. 1995). Conversely, the employee who assumes the position vacated by the plaintiff is the relevant replacement, even if related duties are later reallocated. *See Pilcher v. Cont'l Elecs. Corp.*, No. 96-11130, 1997 WL 361738, at *3–4 (5th Cir. July 8, 1997).

McWilliams contends that she was replaced by Shaw, a twenty-four-year-old teacher who was less experienced and not yet certified.[63] The undisputed chronology

[63] [Doc. No. 22-14, ¶ 8].

does not support that characterization. Dr. Miller testified that Lewis took over the third-grade class McWilliams had taught.[64] At that time, NVLA had only one third-grade section, and Lewis was reassigned from first grade to that section.[65] Only after enrollment increased did NVLA add an additional third-grade section and move Shaw from kindergarten into that additional section.[66] McWilliams offers no evidence contradicting that sequence. Lewis therefore assumed the position vacated by McWilliams; Shaw filled a later-created position after NVLA expanded the grade.

Because Lewis and not Shaw replaced McWilliams, Shaw's age, certification, experience, and salary do not establish the fourth element of McWilliams' *prima facie* case. Because Lewis, not Shaw, replaced McWilliams, evidence concerning Shaw's age, certification, experience, and salary does not establish the fourth element of McWilliams' prima facie case. McWilliams has not produced evidence from which a reasonable jury could find that Lewis was substantially younger or that the nonrenewal otherwise occurred because of age.

Accordingly, summary judgment is appropriate on McWilliams' federal and state age-discrimination claims.

## III. CONCLUSION

For the reasons set forth above,

---

[64] [Doc. No. 22-3, pp. 52–65].
[65] [Id.].
[66] [Id.].

**IT IS ORDERED, ADJUDGED, AND DECREED** that New Vision Learning Academy's Motion for Summary Judgment [Doc. No. 15] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Motion is **GRANTED** as to McWilliams' failure-to-accommodate claims under the Americans with Disabilities Act and Louisiana Employment Discrimination Law, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Motion is **GRANTED** as to McWilliams' age-discrimination claims under the Age Discrimination in Employment Act and Louisiana Employment Discrimination Law, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Motion is **DENIED** as to McWilliams' disability-discrimination claims under the Americans with Disabilities Act and Louisiana Employment Discrimination Law.

MONROE, LOUISIANA, this 10th day of September 2026.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE